# EXHIBIT A

Case 1:24-cv-02977-TRJ   Document 11-1   Filed 07/31/24   Page 1 of 5



One Atlantic Center
1201 West Peachtree Street, NW
Suite 3250 | Atlanta, GA 30309
Tel: 404-888-9700 | Fax: 404-888-9577
www.khlawfirm.com

JEFFREY D. HORST
Tel: 404-888-9594
horst@khlawfirm.com

July 22, 2024

<u>SENT VIA ELECTRONIC MAIL ONLY</u>

Robert W. Capobianco (Robert.capobianco@jacksonlewis.com)
Adriana Midence (Adriana.midence@jacksonlewis.com)
Lisa J. MacBeth (Lisa.MacBeth@jacksonlewis.com)
Jackson Lewis P.C.
171 17th St. NW, Suite 1200
Atlanta, GA 30363

    Re:    *Stimlabs LLC v. Sarah Griffiths*, No. 1:24-cv-2977-TWT (N.D. Ga.)
             Proposed Resolution of Motion for TRO via Return of Stimlabs Documents, and
             Request for Preservation of Evidence

Dear Mr. Copobianco, Ms. Midence, and Ms. MacBeth:

      Jenn Coalson and I represent Sarah Griffiths, Defendant in the above-captioned lawsuit recently filed by Stimlabs, LLC. We will accept service of the Complaint, Motion for Temporary Restraining Order, and other preliminary filings by Stimlabs. Please forward stamp-filed copies of those documents to us, copying my paralegal, Jennifer Brown (jennifer@khlawfirm.com).

### The Trade Secrets Claim

      Dr. Griffiths has done nothing wrong and denies all of the allegations Stimlabs has raised against her. This lawsuit is driven by (1) the bizarre behavior of Stimlabs CEO John Daniel who threatened to harm Dr. Griffiths; and (2) retaliation for Dr. Griffiths raising issues of compensation and equity grant disparities between male and female employees. As you know, Dr. Griffiths was still employed by Stimlabs on June 3, 2024, when she downloaded the documents in question. She remained employed for at least another four weeks, until June 28, according to the separation notice she recently received in the mail.

      The documents in question were used in connection with the performance of Dr. Griffiths's job duties. Many of them were authored or updated, in whole or in part, by Dr. Griffiths. As Stimlabs's IT department knows, Dr. Griffiths was having computer issues—specifically problems with SharePoint syncing—which is why she downloaded the documents rather than viewing them within the SharePoint site.

      The documents in question pertained directly to the meetings and projects that Dr. Griffiths was working on in the month of June. Her sole purpose in accessing and downloading the documents was to

Jackson Lewis
July 22, 2024
Page 2 of 4

allow her to continue performing her job duties for Stimlabs. She has not used the documents for any non-company purpose, nor has she shared them with anyone outside of the company. She is not currently employed in any capacity, let alone with a competitor or with someone else in the industry, and she has no intention of using or disclosing these documents.

On its face, Stimlabs's Complaint fails to allege any act of misappropriation by Dr. Griffiths, even assuming that the information in question qualifies as trade secrets. The facts pled show only that a then-current employee of the company used access the company had granted her to download documents that were necessary and appropriate in furtherance of her employment. We intend to file a motion to dismiss this week. If we are successful defeating Stimlabs's trade secret claim, we will seek our attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

### The TRO Motion/Hearing

While we will be prepared to respond to Stimlabs's motion at the hearing before Judge Thrash, we hope that is unnecessary. In response to Stimlabs's requests that Dr. Griffiths return her company laptop but also not come into the office, Dr. Griffiths met with Melissa O'Connor offsite on June 28, 2024 to return her computer. There was never any attempt by Dr. Griffiths to conceal the fact that she had downloaded these documents on June 3rd, and had Stimlabs had a simple conversation with Dr. Griffiths, she would have readily agreed to delete any remaining copies of these documents in her possession. The lawsuit, emailed to her on the evening of July 3, was completely unnecessary.

Beyond her Stimlabs computer, Dr. Griffiths uses a personal Google Drive that contains Stimlabs documents. My law firm has obtained a copy of all the Stimlabs information from Dr. Griffiths's Google Drive, as well as a small number of hard documents that were in her possession at the time of her termination. We will turn those over to you. This information—not all of which was downloaded on June 3—totals approximately 41 GB of data and approximately 10,931 individual files. Please let us know if you would like us to send that electronically via a file-sharing link or on a flash drive or similar external storage device. We will retain a complete copy for our use in connection with this litigation, but, if you desire, we will see to it that all the documents are deleted from Dr. Griffiths's Google Drive (both from active folders and her trash folder).

The only other electronic devices Dr. Griffiths owns are her personal cell phone and a newly purchased laptop computer she bought after her access to the Stimlabs Mac was locked. She has not saved Stimlabs documents to either of these devices. Her Stimlabs e-mail account has been removed from her phone (and was never installed on her new laptop). Thus, the deletion of the documents from her Google Drive will effect a total removal of that information from her possession. Dr. Griffiths has not used or disclosed any of Stimlabs's information (including the documents it alleges constitute trade secrets) since her employment ended.

Dr. Griffiths has no intention of retaining, accessing, using, or disclosing any of Stimlabs's alleged tangible confidential, proprietary, or trade secret information. The fact that Stimlabs, even after an internal investigation and forensic examination of Dr. Griffiths's computer, can point to no act of actual or threatened misappropriation underscores that our return of this information to you (and our

Jackson Lewis
July 22, 2024
Page 3 of 4

offer to delete it from Dr. Griffiths's devices) renders unnecessary any further proceedings on your TRO motion. We ask that you withdraw that motion.

This proposal is made without conceding any liability or wrongdoing on Dr. Griffiths's part, and with a full reservation of all rights that may be available to Dr. Griffiths under applicable law, including the right to move for an award of attorneys' fees.

### COBRA Continuation Coverage

Stimlabs provided Dr. Griffiths with a separation notice reflecting a termination date of June 28, 2024. She has not yet been provided with a notice or other information about electing continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Please provide that information to us, or have Stimlabs's plan administrator send it directly to Dr. Griffiths, as soon as possible. Based on her prior conversations with John Daniel, Dr. Griffiths had expected to remain employed with Stimlabs and keep her family on the company's health plan at least into September. She and her family members had medical appointments scheduled in the month of July for which she has been advised coverage was denied. It is critical that she receive this information in a timely fashion so she can evaluate her options and, if she does elect continuation coverage retroactive to her date of termination, resubmit these bills.

### Stimlabs, LLC's Obligation to Preserve Evidence

We are investigating a number of potential claims that Dr. Griffiths may have against Stimlabs. These include, among other things, (a) allegations that Dr. Griffiths and other female employees of Stimlabs were discriminated against because of their sex, including that women were paid a lower salary, awarded fewer shares, and subjected to a less favorable vesting schedule than male employees with less experience and responsibility; (b) allegations that Dr. Griffiths was retaliated against for reporting to the company that she intended to seek legal counsel in connection with her pay-disparity concerns; (c) allegations that Stimlabs's executives and directors made material misrepresentations and omissions to actual and potential investors during fundraising campaigns; and (d) allegations that Stimlabs CEO John Daniel threatened physical harm to Dr. Griffiths, including but not limited to during their June 3, 2024 conversation, when he stated he could shoot her.

Stimlabs presumably already has done so, but if not, please ensure that a litigation hold is immediately put into place by Stimlabs to ensure that all potentially relevant evidence, including electronic communications, relating to these matters is preserved. Stimlabs should take all steps necessary to guard against the loss, destruction, or alteration of records and materials that may contain information relevant to the company's claims against Dr. Griffiths or Dr. Griffiths's potential claims against Stimlabs. This includes electronic communications, which may transpire via e-mail, text message, apps (*e.g.*, Slack, Teams, or WhatsApp), voicemail, or other means. Relevant information may be stored on custodians' work computers or their personal devices, including personal cell phones that are used for work-related communications and other purposes. Stimlabs's document-preservation steps should include the suspension of any document retention or document destruction practices, stopping the manual or automatic deletion of e-mails and other electronic communications, stopping the practice of

Jackson Lewis
July 22, 2024
Page 4 of 4

recycling, reusing, or erasing server backup tapes, and securing and preserving all computers, hard drives, mobile devices, and other equipment, wherever located.

The following individuals, among others, are likely to be custodians of relevant documents and communications, including e-mail and text-message communications: John Daniel, Nicholas Steele, Tom Dion, Melissa O'Connor, Michael Jensen, and Jody Swanson. These names are offered to assist your preservation efforts, but not in any way to limit the universe of potential custodians. Mr. Daniel also should preserve all relevant communications and data in his personal electronic devices.

## Conclusion

Please contact Jenn Coalson or me if you have any questions about the contents of this letter. It remains our hope that the proposal above will resolve the need for the TRO hearing currently scheduled for August 1, 2024.

Sincerely,

**KREVOLIN & HORST, LLC**

*/s/ Jeffrey D. Horst*
Jeffrey D. Horst

cc (via email only):   Jennifer K. Coalson (coalson@khlawfirm.com)
                       Sarah Griffiths